# Case No. 421.

## The ANNIE LELAND.

[1 Lowell, 310.][1]

District Court, D. Massachusetts. March, 1869.

### SALVAGE—ABANDONMENT BY CREW—SALVORS FROM SHORE—AMOUNT.

1. A schooner laden with coal stranded upon the rocks and in a dangerous situation was got off and saved by salvors from the shore at their

[1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

own risk and responsibility, while the crew were dismantling her by orders of the captain preparatory to abandoning her as a total loss. *Held.* that the salvors were entitled to a more liberal compensation than in many other cases where the property saved was of greater value; and that their merit was not diminished but increased by the fact of the incompetency and perhaps bad faith of the captain.

2. The service was performed by twenty salvors in a few hours and with no danger. On a value of $11,000 saved, $2,600 and costs allowed as salvage.

In admiralty. The schooner Annie Leland, with a cargo of coal on board, and bound to Boston, went on shore on Nashawena rocks, in Vineyard sound, on the night of the 10th of September, 1868. The weather was thick, but not otherwise severe, and the vessel was discovered in the morning by the master of a fishing-smack, which had been anchored not far off; and he went on board, and found the master of the schooner determined to abandon her, and agreed with him to strip the vessel and take the rigging, sails, and other movables on board his smack, and carry them to the nearest port. Other persons came from the islands soon after, and among others, Captain Church of Cuttyhunk. To him the master said that his schooner was bilged, and that he was going to New Bedford to note a protest and communicate with the owners, but that he should be glad of assistance to save whatever could be got out of the wreck; and Captain Church returned to the island for shovels and other means of getting out the coal. The master soon after went to New Bedford, which was fifteen miles to leeward, and did not return until night, after his schooner was on her way to the same port. Presently after leaving his vessel, he engaged the services of one or two men connected with a schooner larger than the smack, to aid in the stripping and removal of the anchors, rigging, &c.; and when he arrived at New Bedford he telegraphed to his owners that the vessel was wrecked and lost. When Captain Church came on board again, he had a conversation with the mate, and induced him to sound the pumps, and finding that the vessel was not bilged, at once inferred that she might be got off at high tide. The mate declared that his instructions did not look to an attempt to save the vessel; and after some discussion it was agreed that Captain Church might make the trial at his own risk and expense, the mate proceeding, meanwhile, to dismantle the schooner in obedience to his orders. This agreement did not differ from an ordinary salvage undertaking, in so far as the payment depended on success; but it was understood that, in addition to this contingency, Captain Church was to make good any loss of anchors, chains, or cables, that might result from an unsuccessful endeavor to haul the vessel off. A good many persons had now arrived from the islands with three boats, two of them long-boats; and under Church's orders they got up the port anchor,

and carried it out to the most available place at considerable trouble and some risk, one boat being somewhat injured by striking against the anchor. They then hauled taut on the line, and proceeded to shovel coal out of the after part of the vessel, which was the part that was resting on the rocks, and pumped the water out of the hold. All this time the crew and hired men were sending down the topmasts and unreeving the rigging; and the singular spectacle was presented of strangers busily working to save a vessel which her crew were as diligently rendering unseaworthy. After they had got out as much coal as the boats could safely and conveniently carry, some of the libellants went on shore for dinner, and, returning before the tide had fully risen, found that the remaining salvors and the crew had hauled the vessel off the rocks. They all then set to work and bent on the jibs, rigged a spar to the rudder, which had been unshipped and damaged, carried out a kedge to help sheer the schooner from the rocks, when she took the wind, and got her under weigh. Eight out of the twenty salvors remained on board for twenty-four hours longer, until the vessel arrived at New Bedford, two of whom were needed to steer her, and one to pump, and the others to help work the vessel, which steered very badly. The total value saved was from ten to eleven thousand dollars.

T. M. Stetson, for libellants.
J. C. Dodge, for claimants.

LOWELL, District Judge. The rule of court which was passed in the interest of all parties to salvage suits, that the value should be ascertained before the property is delivered, was not observed in this case; and though this happened through a misunderstanding, yet I remark upon it, that it may not occur again. In such a case, doubtful evidence will be construed most strongly against the owners, because they might have made the facts clear before executing their warrant to deliver.

In awarding the salvage in this case, I find it to be one for a proportionately larger compensation than many others in which the value saved has been more considerable. The owners were in great danger of losing their whole property. It is true, this was largely the fault of the master; but as there is no pretence of any collusion between him and the libellants, they are entitled to say that they have saved the vessel in spite of his incompetency or bad faith, against his instructions, at a very critical time, and by the exercise of the qualities which he should have supplied, as well as of the ordinary skill, labor, and energy expected of persons in their situation.

There is some reason to suppose that the master and his brother were considerable owners in the vessel, and that the master at least was insured against a total loss only. Whether this was the true motive of his con-

duct of not, it is certain that Captain Church assumed more than ordinary responsibility and incurred unusual liability in this case; and upon the principles of the admiralty law, he must be compensated for them. There is no probability that the mate and crew could or would have saved the property without the aid of the libellants. The only chance was of the vessel's floating in spite of them; and as she had already lain over one tide, this chance appears a very slight one. The place was rocky, and she had pounded hard and was found to be much chafed, and a hole might have been made in her planks at any moment. The libellants ask for four thousand dollars, the claimants are said to have offered five hundred: I award two thousand six hundred dollars and costs. The apportionment among the salvors is to be referred to the court before distribution is made.

Decree accordingly.